UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
:
REKHA KISSO-GASHI and FATOS GASHI,                       :
:
Plaintiffs,              :
:
-v-                              :
:
SP PLUS CORPORATION,                                      :
:
Defendant.              :
:
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_03/23/2026__

24-cv-04263 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendant SP Plus Corporation ("Defendant") moves, pursuant to Federal Rule of Civil Procedure 56, for an order granting it summary judgment on all claims and cross-claims and dismissing Plaintiffs' complaint in its entirety. Dkt. No. 25. Plaintiffs Rekha Kisso-Gashi ("Kisso-Gashi") and Fatos Gashi ("Gashi," and with Kisso-Gashi, "Plaintiffs") oppose the motion and move the Court to reopen discovery pursuant to Federal Rules of Civil Procedure 16(b)(4). Dkt. No. 28.[1]

## BACKGROUND

Kisso-Gashi is the victim of a sexual assault. Dkt. No. 25-15 ¶ 24; Dkt. No. 30-1 ¶ 24.[2] On the evening of September 22, 2023, the driver of a shuttle bus who had picked her up from

---

[1] Plaintiffs also invoke Federal Rule of Civil Procedure 26(e). That rule requires parties to supplement their initial disclosures and other document requests upon learning that their responses are incomplete or incorrect. Fed. R. Civ. P. 26(e).

[2] The facts in this opinion are considered as undisputed for purposes of summary judgment and construed in favor of the non-moving parties. Where the parties agree that the stated fact is undisputed, the Court cites to the 56.1 statements of both Plaintiffs and Defendant. Where a statement in a Rule 56.1 statement is disputed, the Court has reviewed the underlying evidence to determine whether a genuine issue of fact exists. The recitation of that fact in this background section reflects the Court's conclusion that the denial is not accompanied by evidence creating a genuine issue of fact. *See, e.g., Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 974 F.

her employment at Mount Sinai Hospital ("Mount Sinai") stopped the bus, left the driver's seat, sat next to Kisso-Gashi and started to touch her body.  Dkt. No. 25-15 ¶ 27; Dkt. No. 30-1 ¶ 27. Kisso-Gashi pushed the driver's hands away and he thereafter returned to the driver's seat.  Dkt. No. 25-15 ¶ 28; Dkt. No. 25-4 at 59:15–60:13.  When the bus arrived at Kisso-Gashi's destination, about fifteen to twenty minutes later, the driver smacked Kisso-Gashi's buttocks as she was exiting the bus, and stated "stop giving me a hard time, next time just give it up."  Dkt. No. 25-15 ¶ 30; Dkt. No. 30-1 ¶ 30.  Plaintiff Gashi is the husband of Kisso-Gashi.  Dkt. No. 25-15 ¶ 2; Dkt. No. 30-1 ¶ 2.

Defendant was under contract with Mount Sinai to provide shuttle bus service for various routes.  Dkt. No. 25-15 ¶ 3; Dkt. No. 30-1 ¶ 3.

The driver of the bus was non-party Willie Robinson ("Robinson").  Dkt. No. 25-15 ¶ 4; Dkt. No. 30-1 ¶ 4.  Robinson was a shuttle bus operator employed by Defendant at the time of the incident.  Dkt. No. 25-15 ¶ 4; Dkt. No. 30-1 ¶ 4.  Robinson was arrested two months later, in November 2023, and charged with one count of forcible touching, one count of sexual abuse in the third degree, and one count of attempted forcible touching.  Dkt. No. 25-15 ¶¶ 35–36; Dkt. No. 30-1 ¶¶ 35–36; *see also* Dkt. No. 25-13 at 1–2.

Robinson had been employed by Defendant since May or June 2015.[3]  Prior to hiring Robinson, Defendant conducted a background check, which included a criminal history search from 2008 to 2015, a drug test, and a physical examination.  Dkt. No. 25-15 ¶ 8; Dkt. No. 30-1

---

Supp. 2d 240, 243 (S.D.N.Y. 2013) (holding that denials that are not supported by citations to admissible record evidence are to be disregarded).  In certain instances, the facts are in genuine dispute.  In each of those instances, the stated fact is immaterial and accordingly, the Court has not cited it but referenced the dispute in a footnote.

[3] The record is unclear as to the precise month in 2015 when Robinson began his employment. *Compare* Dkt. No. 28 at 7 (employment began in May 2015) *with* Dkt. No. 25-12 at 1 (Robinson statement that employment began June 1, 2015).  The difference is immaterial.

¶ 8.  That search revealed no criminal history and the drug test returned negative results.  Dkt. No. 25-15 ¶ 9; Dkt. No. 30-1 ¶ 9.  Defendant did not do a ten-year background check on Robinson prior to hiring him, but his employment application did ask for employment information for the prior ten years.  Dkt. No. 30-1 ¶ 51; Dkt. No. 33 ¶ 51.  Robinson listed his employment going back to 2004, and also indicated that he was enrolled in Ulster Community College from 1991 to 2003 and graduated with an associate's degree in applied science.  Dkt. No. 29-3.  Defendant requires all employees to complete training modules via "SP Plus University," which includes an annual "Preventing Sexual Harassment" training.  Dkt. No. 25-15 ¶ 10; Dkt. No. 30-1 ¶ 10.[4]  In 2015 and 2018, Defendant disciplined Robinson for four incidents that involved (1) not keeping his eyes on the road while speaking with a passenger; (2) taking a hands-free personal phone call; (3) rolling through a red stop light; and (4) handling his cellphone.  Dkt. No. 25-15 ¶ 17; Dkt. No. 30-1 ¶ 17.  None of the four reported incidents were related to sexual misconduct.  Dkt. No. 25-15 ¶ 19; Dkt. No. 30-1 ¶ 19.

At the time of the incident, Kisso-Gashi was an employee of Mount Sinai.  Dkt. No. 25-15 ¶ 1; Dkt. No. 30-1 ¶ 1.  She began working for Mount Sinai in March 2014 as a patient care associate.  Dkt. No. 30-1 ¶ 37; Dkt. No. 33 ¶ 37.  Defendant contracted with Mount Sinai to provide shuttle bus services for various routes, Dkt. No. 25-15 ¶ 3; Dkt. No. 30-1 ¶ 3, and Kisso-Gashi commuted on the shuttle bus operated by Robinson, Dkt. No. 25-15 ¶ 20; Dkt. No.

---

[4] Defendant claims that Robinson completed sexual harassment prevention training in 2017, 2019, 2020, 2021, 2022 and 2023.  Dkt. No. 25-15 ¶ 11.  Plaintiffs assert that the contention relies on "inadmissible, unverifiable hearsay evidence."  Dkt. No. 30-1 ¶ 11.  Defendant's claim is supported by a transcript of Robinson's training which is authenticated by an affirmation of counsel.  Dkt. No. 25-8; *see Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, 2025 WL 2781280, at *2 (S.D.N.Y. Sept. 30, 2025) (exhibits may be authenticated by declaration of counsel at summary judgment stage).  The transcript would be admissible as a business record.  Fed. R. Evid. 803(6).  In any event, it is immaterial to the Court's decision and therefore the Court disregards it.

30-1 ¶ 20.  Kisso-Gashi had known Robinson since about 2018 or 2019 and never made a complaint about him prior to the incident.  Dkt. No. 25-15 ¶ 21; Dkt. No. 30-1 ¶ 21.

On the day in question, Kisso-Gashi finished her shift at Mount Sinai and texted Robinson to confirm he would pick her up with the shuttle bus at the corner of 99th Street and Park Avenue.  Dkt. No. 25-15 ¶ 25; Dkt. No. 30-1 ¶ 25.  The bus arrived at approximately 8:15 p.m.  Dkt. No. 30-1 ¶ 41; Dkt. No. 33 ¶ 41.  When the shuttle bus arrived, passengers exited and Kisso-Gashi boarded and sat on the passenger side of the bus, closest to the window.  Dkt. No. 25-15 ¶ 26; Dkt. No. 30-1 ¶ 26.  Within approximately five minutes after picking up Kisso-Gashi and while the bus was still in Manhattan, Robinson pulled into a side street, turned off the shuttle bus lights, and began to sexually attack Kisso-Gashi.  Dkt. No. 30-1 ¶ 43; Dkt. No. 33 ¶ 43.  At the time, Kisso-Gashi was alone with Robinson.  Dkt. No. 30-1 ¶ 42; Dkt. No. 33 ¶ 42.  As noted, Robinson left the driver's seat, sat next to Kisso-Gashi and started to touch her body.  Dkt. No. 25-15 ¶ 27; Dkt. No. 30-1 ¶ 27.  Kisso-Gashi repeatedly tried to push his hands away until Robinson returned to the driver's seat.  Dkt. No. 25-15 ¶ 28; Dkt. No. 25-4 at 59:15–60:13. Robinson then drove Kisso-Gashi to her destination, a ride which took approximately fifteen to twenty minutes.  Dkt. No. 25-15 ¶ 29; Dkt. No. 30-1 ¶ 29.  When Kisso-Gashi exited the bus, Robinson smacked her buttocks and said, "stop giving me a hard time, next time just give it up." Dkt. No. 25-15 ¶ 30; Dkt. No. 30-1 ¶ 30.  Kisso-Gashi reported the incident to Mount Sinai and the report of the incident was passed on along to Defendant.  Dkt. No. 25-15 ¶ 31; Dkt. No. 30-1 ¶ 31.  The same day, Defendant suspended Robinson, notified Robinson's union, and requested video footage.  Dkt. No. 25-15 ¶ 32; Dkt. No. 25-5 at 68:2–9.  Robinson resigned on September 29, 2023, and was arrested in November 2023.  Dkt. No. 25-15 ¶¶ 34–35; Dkt. No. 30-1 ¶¶ 34–35.

Defendant outfits its buses with GPS tracking and video surveillance with a camera facing inside the bus and forward outside the bus, which would be used to monitor events such as the bus driver hitting the brakes too hard, hitting another vehicle, or driving over the speed limit; the camera would not register a bus deviating from a route as an event for monitoring.  Dkt. No. 25-15 ¶ 12; Dkt. No. 25-5 at 25:22–30:20.[5]  The video surveillance is continuously recorded by a third-party vendor named SmartDrive which is contracted by Defendant.  Dkt. No. 30-1 ¶ 53; Dkt. No 33 ¶ 53.  Defendant does not have access to the recordings from SmartDrive's monitoring system unless an event, of the type listed above, is triggered by some sort of action by the shuttle bus driver.  Dkt. No. 30-1 ¶ 54; Dkt. No. 33 ¶ 54.  Defendant does not recall seeing a triggering event for the day of the incident.  Dkt. No. 30-1 ¶ 60; Dkt. No. 33 ¶ 60.  Defendant also employs a roaming supervisor to attend to event or accident locations and alert bus operators when a passenger needs a ride.  Dkt. No. 25-15 ¶ 13.[6]  Defendant does not have a route monitoring system installed to electronically monitor whether their shuttle buses are on their routes.  Dkt. No. 30-1 ¶ 45; Dkt. No. 33 ¶ 45.

Prior to the incident, Kisso-Gashi had never felt uncomfortable riding in the bus with Robinson and had not told anyone about any inappropriate behavior by him.  Dkt. No. 25-15 ¶¶ 22–23; Dkt. No. 25-4 at 108:19–25.  Robinson engaged in banter but Kisso-Gashi thought it was harmless.  Dkt. No. 25-4 at 108:2–109:4.  A few weeks after the incident, Kisso-Gashi's friend from work told her that Robinson had made inappropriate comments to her.  Dkt. No. 30-1 ¶ 44; Dkt. No. 33 ¶ 44.

---

[5] Plaintiffs dispute this assertion but it is supported by testimony from a senior manager at Defendant who oversaw the bus routes in connection with Defendant's contract with Mount Sinai.  Dkt. No. 25-5 at 7:7–11, 22:21–25, 25:22–30:20.

[6] Plaintiffs claim that this assertion relies on inadmissible hearsay but it is supported by testimony from a senior manager at Defendant.  Dkt. No. 25-5 at 36:11–37:2.

Robinson had been arrested for armed robbery in 1988 for which he served a seven-year term of imprisonment and had a criminal record in Florida, but Defendant did not know of that fact prior to the incident.  Dkt. No. 30-1 ¶ 56; Dkt. No. 33 ¶ 56; *see also* Dkt. No. 29-1 at 2.

**PROCEDURAL HISTORY**

Plaintiffs initiated this action by complaint filed on June 4, 2024.  Dkt. No. 3.  The complaint alleges claims for (1) assault and battery, *id.* ¶¶ 30–34; (2) negligent hiring, supervision, and retention, *id.* ¶¶ 35–38; (3) negligent infliction of emotional distress, *id.* ¶¶ 39–43; (4) intentional infliction of emotional distress, *id.* ¶¶ 44–45; and (5), on behalf of Gashi, loss of consortium, *id.* ¶¶ 46–49.

Defendant answered on July 19, 2024.  Dkt. No. 11.  The Court held an initial conference on August 30, 2024, Aug. 30, 2024 Minute Entry, and entered a case management plan and scheduling order on September 26, 2024, Dkt. No. 18.  The case management plan provided for fact discovery to be completed by February 14, 2025, and all discovery to be completed by April 15, 2025.  *Id.*  On February 26, 2025, the Court extended the time to complete all discovery to May 15, 2025, for good cause shown.  Dkt. No. 22.

On June 9, 2025, Defendant moved for summary judgment.  Dkt. No. 25.  Defendant accompanied his motion with a memorandum of law, a Rule 56.1 statement, the declaration of counsel, and exhibits.  *Id.*  On June 23, 2025, Plaintiffs filed a memorandum of law in opposition to the motion for summary judgment.  Dkt. No. 28.  In that memorandum, Plaintiffs also moved the Court to reopen discovery.  *Id.* at 10–12.  Plaintiffs also filed a counter 56.1 statement and the declaration of counsel.  Dkt. Nos. 29–30.  On June 30, 2025, Defendant filed a reply memorandum of law in further support of its motion for summary judgment, a response to

Plaintiffs' counterstatement pursuant to Rule 56.1, and the declaration of counsel.  Dkt. Nos. 31–33.

## DISCUSSION

Two matters are before the Court: Plaintiffs' request to reopen discovery and Defendant's motion for summary judgment.  Dkt. Nos. 25, 28.  The Court addresses the request to reopen discovery first and then Defendant's motion for summary judgment.

### I.  Plaintiffs' Request to Reopen Discovery

As noted, Defendant had a contract with a third-party vendor named SmartDrive to conduct video surveillance of its buses.  The buses were outfitted with cameras facing inside and outside the bus and Defendant received clips of "events" relating to the driving of the bus.  Dkt. No. 30-1 ¶ 54; Dkt. No. 33 ¶ 54.  Defendant identified the "bus video" in its Rule 26(a)(1) disclosures dated September 13, 2024, as a document it might use to support its defenses in this case, Dkt. No. 31-2, and produced the video on February 25, 2025, when it became available, Dkt. No. 31-3.  Defendant did not identify SmartDrive by name in any interrogatory response or deposition testimony until May 12, 2025, when its Rule 30(b)(6) witness identified SmartDrive by name, Dkt. No. 25-5, but the video has a "SmartDrive" logo running across the left corner, Dkt No. 31-3.  Discovery in this case ended on May 15, 2025.  Dkt. No. 22.  Plaintiffs now seek to reopen discovery to obtain information about Defendant's relationship with SmartDrive.  Specifically, Plaintiffs seek leave to serve more than 10 interrogatories and 10 document requests directed solely to the SmartDrive relationship and an order compelling production of the SmartDrive contract, policies, and any responsive documents concerning video footage, event data, or supervisory logs related to the shuttle driver involved in the matter.  Dkt. No. 28 at 11–12.

Several rules are relevant to Plaintiffs' request.  First, Federal Rule of Civil Procedure 16(b)(4) permits a court to modify a scheduling order "for good cause."  Fed. R. Civ. P. 16(b)(4).  "A party seeking relief from the discovery schedule, including the reopening of discovery when discovery has closed, must make an application to the Court demonstrating why good cause exists to modify the schedule."  *McKay v. Triborough Bridge & Tunnel Auth.*, 2007 WL 3275918, at *1 (S.D.N.Y. Nov. 5, 2007) (Sullivan, J.).  "[A] finding of 'good cause' depends on the diligence of the moving party."  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (Sotomayor, J.); *see also Carroll v. Trump*, 2023 WL 2006312, at *7 (S.D.N.Y. Feb. 15, 2023) (courts place "importance on the moving party's diligence in obtaining the discovery within the deadlines set by the court's scheduling order").  Courts in this Circuit frequently consider the following six factors in deciding whether to reopen discovery:  "(1) the imminence of trial; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court; and (6) the likelihood that the discovery will lead to relevant evidence."  *United States v. Prevezon Holdings, Ltd.*, 236 F. Supp. 3d 871, 873 (S.D.N.Y. 2017); *accord Johnson v. City of Rochester*, 2024 WL 4799913, at *1 (W.D.N.Y. Nov. 15, 2024); *Weihai Lianqiao Int'l Coop Grp. Co. v. A Base IX Co. LLC*, 2024 WL 3498850, at *1 (S.D.N.Y. July 22, 2024); *Moroughan v. Cnty. of Suffolk*, 320 F. Supp. 3d 511, 515 (E.D.N.Y. 2018).

Second, Federal Rule of Civil Procedure 26(e) requires a party who has made an incomplete or incorrect initial disclosure under Rule 26(a) to supplement or correct its disclosure "if the additional or corrective information has not otherwise been made known to the other

8

parties during the discovery process or in writing." Fed. R. Civ. P. 26(e).  Among the remedies a court may provide for a violation of Rule 26(e) is an order reopening discovery to allay any prejudice resulting from a late disclosure.  *See, e.g.*, *3DT Holdings LLC v. Bard Access Sys. Inc.*, 2022 WL 1569493, at \*4 (S.D.N.Y. May 17, 2022); *Coene v. 3m Co.*, 303 F.R.D. 32, 45 (S.D.N.Y. 2014); *Rivera v. United Parcel Serv.,* 325 F.R.D. 542, 548 (S.D.N.Y. 2018); *JT Cleary, Inc. v. Narragansett Electric Co.*, 2024 WL 4627641 at \*7 (S.D.N.Y. Oct. 30, 2024).

Finally, Rule 56(d) permits a court to deny or defer considering a summary judgment motion to allow the non-moving party time to take discovery but only upon the submission of an affidavit or declaration that demonstrates the discovery is necessary to "present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*, 33 F. Supp. 3d 455, 491 (S.D.N.Y. 2014), *aff'd sub nom. Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85 (2d Cir. 2017).

The Court will address the applicability of each Rule in turn.  At the summary judgment stage, where both Rule 16 and Rule 56(d) may be invoked on a request to reopen discovery, courts consider the timeliness and applicability of both rules.  *See, e.g., Bembo v. Cnty. of Niagara*, 2016 WL 4189851, at \*5 (W.D.N.Y. Aug. 9, 2016) (denying request to reopen discovery after considering both Rule 16 and Rule 56); *Arnold v. Krause, Inc.*, 232 F.R.D. 58, 66 (W.D.N.Y. 2004), *aff'd and adopted*, 233 F.R.D. 126 (W.D.N.Y. 2005) (denying request to amend the case management plan under Rule 16 to allow for additional expert disclosures and denying request for additional discovery under Rule 56); *see also Krawec v. Kiewit Constructors Inc.*, 2013 WL 1104414, at \*10 (S.D.N.Y. Mar. 1, 2013) (where both parties moved for summary judgment and, as relevant to one claim, Defendant moved to preclude expert testimony under Rule 26 or in the alternative reopen discovery to permit deposition, court granted motion to

9

reopen discovery, relying on Rule 16 factors); *Kirkland v. Cablevision Sys.*, 2012 WL 4336193, at *2 (S.D.N.Y. Sept. 21, 2012) (considering motion to reopen discovery made while summary judgment motions were pending under Rule 16 standard).

First, Plaintiffs have not shown good cause for reopening discovery under Rule 16(b)(4). Issue was joined in this case when Defendant answered on July 19, 2024. Dkt. No. 11. Initial disclosures were served by Defendant as required on September 13, 2024. Dkt. No. 31-2. Plaintiffs originally had until mid-February 2025 to complete fact discovery, Dkt. No. 18, a date that was later extended to May 15, 2025, Dkt. No. 22. "[T]here has already been adequate opportunity for discovery.'" *Carroll*, 2023 WL 2006312, at *7 (quoting *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011)); *see also Su v. Versa Cret Contracting Co., Inc.*, 2024 WL 1704695, at *5 (E.D.N.Y. Apr. 19, 2024) ("discovery should not be extended when there was ample opportunity to pursue the evidence during discovery") (internal citations and quotations omitted).

The *Prevezon Holdings* factors applicable to Rule 16 weigh against reopening discovery. As to the first factor, Defendant's summary judgment motion was timely filed and is now fully submitted, Dkt. No. 25, so the joint pretrial order requested by June 16, 2025 and the jury trial scheduled for August 2025, Dkt. No. 22, have been adjourned *sine die*, May 21, 2025 Minute Entry. While as a technical matter, "there is no trial date to delay," *Krawec*, 2013 WL 1104414, at *8, were the complaint to survive summary judgment, trial would be imminent. Reopening discovery would delay the resolution of summary judgment and any possible trial. *See Griffith v. Metro. Transit Auth.*, 2021 WL 50859, at *2 (S.D.N.Y. Jan. 6, 2021) ("while reopening discovery would not necessarily impact the timing of a trial, it would certainly impact the timing of the final resolution of this case as it would delay the summary judgment motion."); *U.S.*

10

*Commodity Futures Trading Comm'n v. LaMarco*, 2023 WL 7283629, at *6 (E.D.N.Y. Nov. 3, 2023) (first factor weighs against reopening discovery where "[p]laintiff has already expressed intention to file for summary judgment, and the parties have set a briefing schedule regarding the same."); *see also McNeill v. Jordan*, 2017 WL 9482092, at *8 n.8 (E.D.N.Y. Feb. 17, 2017), *report and recommendation adopted in part*, 2017 WL 2955763 (E.D.N.Y. July 11, 2017) ("It is inappropriate to reopen discovery at this point, when the summary judgment motion has been fully briefed").  This factor weighs against reopening discovery.  Secondly, the request is opposed—this factor goes in favor of Defendant.  Dkt. No. 31 at 9-10.  In regard to the third and fourth factors, while the prejudice to Defendant would only be slight, Plaintiffs have not shown diligence in obtaining the discovery.  Plaintiffs assert that they learned of SmartDrive's identity only through the 30(b)(6) testimony of Defendant in May 2025, but do not identify any efforts they made prior to that date to learn who took the video from the bus and what Defendant's relationship was with that entity.  Dkt. No. 28 at 10–11.  Plaintiffs were put on notice of the existence of the video as early as September 2024, Dkt. No. 31-2, and received the video footage imposed with the identity of SmartDrive in February 2025, Dkt. No. 31-3, over two months prior to the close of fact discovery.  If the identity of SmartDrive and the relationship of Defendant with that entity was significant to this case, that would have been foreseeable to Plaintiffs in September 2024 (a fact considered as part of the fifth *Prevezon* factor).  Plaintiffs have no excuse for waiting until after discovery was closed to seek this information.  Finally, as to the sixth factor, Plaintiffs have not identified any likelihood that the discovery it requests will lead to relevant evidence.  Plaintiffs have the bus videotapes.  Defendant does not dispute that Kisso-Gashi was assaulted.  It simply claims that it bears no legal responsibility for the assault.  Plaintiffs have had the opportunity to probe the facts relevant to the defenses, *i.e.*, whether

11

Robinson was acting within the scope of his responsibilities and whether there was conduct that put Defendant on notice that Robinson was a risk.  Plaintiffs offer no reason to believe that that the discovery they request will yield anything more than what Plaintiffs already have.  "Although the scope of discovery is broad, it is not a fishing expedition."  *Congelados del Cibao v. 3 Kids Corp.*, 2021 WL 3774141, at *2 (S.D.N.Y. Aug. 24, 2021) (citing cases).

Second, Defendant did not violate Rules 26(a)(1) or 26(e).  Rule 26(a)(1)(A)(i) requires a party to disclose the name and known addresses and telephone numbers for individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses and Rule 26(a)(1)(A)(ii) requires a party to disclose by description and location all documents in its possession, custody, or control that it may use to support its claims or defenses.  Fed. R. Civ. P. 26(a)(1)(A)(i), (ii).  As noted, Rule 26(e) requires an incomplete or incorrect initial disclosure to be supplemented unless the omitted information is otherwise disclosed during discovery.  Fed. R. Civ. P. 26(e).  Plaintiffs complain that Defendant did not identify SmartDrive in its Rule 26 disclosures and did not produce any documents concerning SmartDrive.  Dkt. No. 28 at 11.  But the rules require the disclosure only of individuals and documents that might be used by the disclosing party to support its claims and defenses and Plaintiffs do not assert how SmartDrive or the documents regarding SmartDrive would be used by Defendant in its claims or defenses.  *See Hector v. Hector*, 2025 WL 1212417, at *4 n.6 (S.D.N.Y. Apr. 25, 2025) (denying request to reopen discovery to serve requests on two individuals because, *inter alia*, plaintiff did not demonstrate diligence and, if shown that defendants failed to disclose the individuals' names under Rule 26(a)(1), the court found it "reasonable to infer the two college students do not factor in their planned defenses."); *Parker v. N.Y. State Div. of Parole*, 2017 WL 3600420, at *6

(S.D.N.Y. Aug. 18, 2017) (where defendants "did not intend to use the information . . . to support their defenses, they had no obligation to disclose their names under Rule 26(a)(1)").

Moreover, the identity of SmartDrive was disclosed in the bus video that was produced. There is "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process[.]" Fed R. Civ. P. 26(e) advisory committee's notes to the 1993 amendment. *See Koral v. Saunders*, 2025 WL 1332017, at *3 (S.D.N.Y. May 7, 2025) (denying request to preclude witness testimony when witnesses were made known to Plaintiff during the discovery process (citing Fed. R. Civ. P. 26(e)(1)(A)); *Saray Dokum ve Madeni Aksam Sanayi Turizm A.S. v. MTS Logistics Inc.*, 335 F.R.D. 50, 53 (S.D.N.Y. 2020) (denying request to reopen discovery to serve new discovery requests where the need for the documents was foreseeable and relevance of subject of requests was known).  Rule 26(e) cannot provide a hook for Plaintiff to reopen discovery.

Lastly, Rule 56(d) does not give Plaintiffs a right to an order denying or deferring consideration of the motion for summary judgment.  As an initial threshold matter, that rule requires the party seeking to avoid summary judgment to file an affidavit or declaration identifying the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).  The rule is most frequently invoked when a motion is made prior to the close of discovery.  "Specifically, Rule 56(d) is addressed to so-called 'premature' summary judgment motions.  Under Rule 56(b), a party may move for summary judgment as soon as the case is filed, without waiting for discovery to begin, let alone run its full course." 11 Moore's Federal Practice § 56.100[1] (3d ed. 2025).  In cases like this one, where full (and extended) opportunity for discovery has been provided and a motion for summary judgment has been made after the close of discovery, "[r]elief under Rule 56(d) 'is not available[.]'" *Capitol*

13

*Records, Inc. v. MP3tunes,* LLC, 2013 WL 1987225, at \*8 (S.D.N.Y. May 14, 2013) (quoting *Espada v. Schneider*, 522 F. Supp. 2d 544, 549 (S.D.N.Y. 2007)). Furthermore, Plaintiffs have not filed such an affidavit or declaration and their request is defective for that reason alone. *Gene Codes Forensics, Inc. v. City of New York*, 812 F. Supp. 2d 295, 304 (S.D.N.Y. 2011) ("A reference to Rule 56(f) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit, and the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994))); *Gamble v. Tyson*, 2019 WL 5722129, at \*12 (S.D.N.Y. Jan. 4, 2019) (quoting same). Even if the Court were prepared to disregard both the untimeliness of the Rule 56(d) request and that defect, and consider Plaintiff's memorandum of law as their affidavit or declaration, that would not help Plaintiffs. Plaintiffs have not identified how the information they seek with respect to SmartDrive is essential to justify their opposition. The principal questions raised by the motion, as discussed below, are whether Robinson was acting within the scope of his responsibilities and in furtherance of Defendant's business when he assaulted Kisso-Gashi and whether there existed facts that put Defendant on notice that Robinson was a risk. The first question does not turn at all on Defendant's contract with SmartDrive or the other documents that are requested. And, as to the second question, which concerns the information in Defendant's possession, revealing what Defendant knew, Plaintiffs have not demonstrated why they could not obtain any information they are now missing during the ample time the Court permitted for discovery. *See Espada v. Schneider*, 522 F. Supp. 2d 544, 549–50 (S.D.N.Y. 2007) ("[E]ven where a Rule 56[d] motion is timely, such a motion is not intended for use[] as a discovery tool by a party who has had adequate opportunity to seek or

compel such information and has simply failed to do so."); *Burlington Coat Factory Warehouse Corp. v. Espirit De Corp.*, 769 F.2d 919, 927–28 (2d Cir. 1985) (denying motion to reopen discovery under Rule 56 where party "had ample time in which to pursue the discovery that it now claims is essential.").

With the request to reopen discovery resolved, the Court turns to the motion for summary judgment.

## II.      Defendant's Motion for Summary Judgment

The Court first lays out the standards applicable to Defendant's motion for summary judgment and then discusses each of Plaintiffs' claims.  For the reasons that follow, Defendant's motion is granted.

### A.      Standards For Summary Judgment

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001), and the movant bears the burden of demonstrating that "no genuine issue of material fact exists," *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted). If the movant meets its burden, "the nonmoving party must come forward with admissible

15

evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

A party opposing summary judgment must present evidence "in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). "The principles governing admissibility of evidence do not change on a motion for summary judgment." *Id.* at 55–56. In particular, information that constitutes hearsay cannot create a genuine issue of material fact. "Hearsay is any out-of-court statement offered to prove the truth of the matter asserted in the statement." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013). However, "[i]n general, even if evidence is not properly authenticated at the summary judgment stage, 'so long as evidence will be presented in admissible form at trial, it may be considered on summary judgment.'" *Hill v. Cnty. of Montgomery*, 2019 WL 5842822, at *10 (N.D.N.Y. Nov. 7, 2019) (quoting *Harleysville Worcester Ins. Co. v. Wesco Ins. Co.*, 752 F. App'x 90, 93–94 (2d Cir. 2019) (summary order)).

Local Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York prescribes the manner and method in which a party is to present undisputed issues of fact to the Court. The moving party must annex to its notice of motion "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a). The party opposing the motion for summary judgment is required to "include a correspondingly

16

numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Rule 56.1(b).  The statements "must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Local Rule 56.1(d).  The consequences of failure to follow these rules can be severe.  "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Local Rule 56.1(c).

Thus, a Local Rule 56.1 statement "is not itself a vehicle for making factual assertions that are otherwise unsupported in the record."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).  If portions of a Local Rule 56.1 counterstatement cite to no admissible evidence in support of its denials, the Court is instructed to disregard those portions and deem the factual statements in the original Local Rule 56.1 statements admitted.  *See, e.g.*, *Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 974 F. Supp. 2d 240, 243 (S.D.N.Y. 2013) (holding that denials that are not supported by citations to admissible record evidence are to be disregarded).  When the non-moving party in certain instances fails to cite to any record evidence for its denials, the Court accepts the moving party's recitation of those facts in its Local Rule 56.1 statement as undisputed.  *See Colton v. N.Y. Div. of State Pol.*, 2017 WL 5508911, at *2 (N.D.N.Y. Feb. 8, 2017) ("The failure to properly controvert a supported statement of fact by pointing to admissible evidence contravening the movant's evidence results in the movant's statement being deemed admitted."); *Knight v. N.Y.C.H.A.*, 2007 WL 313435, at *1 (S.D.N.Y.

Feb. 2, 2007) ("Pursuant to Local Civil Rule 56.1 Defendant's statements are deemed to be admitted where Plaintiff has failed to specifically controvert them with citations to the record.").

### B.    *Respondeat Superior* Liability

Plaintiffs' first, third, and fourth claims of relief are pled on behalf of Kisso-Gashi. Her first claim for relief alleges that she was a victim of assault and battery, Dkt. No. 3 ¶¶ 30–34, her third claim is for negligent infliction of emotional distress, *id.* ¶¶ 39–43, and her fourth claim is for intentional infliction of emotional distress, *id.* ¶¶ 44–45. Plaintiffs' fifth claim is for loss of consortium on behalf of Gashi, *id.* ¶¶ 46–49. All four of these claims are based on the incident on the bus where Robinson assaulted Kisso-Gashi. Plaintiffs do not allege that Defendant itself engaged in those torts. Rather, they seek to hold Defendant liable in *respondeat superior*. Defendant moves for summary judgment on Plaintiffs' claims on the basis that an employer can be held liable in *respondeat superior* for the tortious act of its employee only if the act was committed within the scope of, or in furtherance of, their employment at the time of occurrence and that sexual misconduct is "necessarily outside the scope of employment." Dkt. No. 25-16 at 5.

"Under the doctrine of *respondeat superior*, an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment." *N.X. v. Cabrini Med. Ctr.*, 765 N.E.2d 844, 847 (N.Y. 2002); *accord Doe v. Guthrie Clinic, Ltd.*, 5 N.E.3d 578, 580 (N.Y. 2014). The doctrine does not create a cause of action separate from the predicate tort but instead confers a form of "vicarious," or "secondary," liability rooted in the agency relationship. *See Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 446 n.7 (2d Cir. 2015); *Hardy v. Walsh Manning Sec., L.L.C.*, 341 F.3d 126, 130 (2d Cir. 2003); Restatement (Third) Of Agency § 7.07 (2006). "Pursuant to this doctrine, the employer may be liable when the employee acts

18

negligently or intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment." *Judith M. v. Sisters of Charity Hosp.,* 715 N.E.2d 95, 96 (N.Y. 1999). "In determining whether an employee acted within the scope of employment for purposes of vicarious liability, [the court considers] 'the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated' (i.e., whether it was foreseeable)." *Rivera v. State*, 142 N.E.3d 641, 645 (N.Y. 2019) (quoting *Riviello v. Waldron,* 4 391 N.E.2d 1278, 1281 (1979)). "[W]here an employee's actions are taken for wholly personal reasons, which are not job related, the challenged conduct cannot be said to fall within the scope of employment." *Montalvo v. Episcopal Health Servs., Inc.*, 102 N.Y.S.3d 74, 77 (2d Dept. 2019).

"New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." *Adorno v. Correctional Servs. Corp.,* 312 F. Supp. 2d 505, 517 (S.D.N.Y. 2004) (quoting *Ross v. Mitsui Fudosan, Inc.,* 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998). The principle has been applied by the New York courts in a number of different factual settings. *See, e.g.*, *N.X. v. Cabrini Med. Ctr.*, 765 N.E.2d 844, 847 (N.Y. 2002) (sexual assault perpetrated by a hospital employee is not in furtherance of hospital business and is a clear departure from the scope of employment, having been committed for wholly personal motives); *Montalvo v. Episcopal Health Servs., Inc.*, 102 N.Y.S.3d 74, 77 (2d Dep't 2019) (sexual assault by doctor on patient is not in furtherance of an employer's business and is a clear departure from the scope of employment, having been committed for wholly personal motives);

19

*Doe v. Grant Wilfley Casting, Inc.*, 2026 WL 516616, at *2 (2d Dep't Feb. 25, 2026) (assault committed by extra on movie set solely for personal motives); *Boatman v. Cnty. of Onondaga*, 217 N.Y.S.3d 377, 379 (4th Dep't 2024) (probation department not liable in *respondeat superior* for sexual assault committed by probation officer on the officer's supervisee); *KM v. Fencers Club, Inc.,* 83 N.Y.S.3d 197 (2d Dep't 2018) (assault of athlete by his coach); *Mayo v. N.Y.C. City Transit Auth.*, 3 N.Y.S.3d 36, 37 (2d Dep't 2015) (sexual assault on minor in a New York City Transit Authority program).  Of particular relevance here, the courts routinely have held that sexual assaults committed by bus and taxi drivers on their passengers are not within the scope of their employment and thus do not give rise to *respondeat superior* liability.  *See Doe v. Rohan*, 793 N.Y.S.2d 170, 173–74 (2d Dep't 2005) ("Since the bus driver's acts of sexual abuse and molestation were a clear departure from the scope of his employment, committed solely for personal reasons, and unrelated to the furtherance of his employer's business, neither the bus company nor the School District can be held vicariously liable for his acts"); *Browne v. Lyft, Inc.*, 194 N.Y.S.3d 85, 88 (2d Dep't 2023) ("Here, assuming that Singh engaged in the sexual misconduct as alleged in the complaint, it is clear that such conduct was a departure from his duties as a Lyft driver and was committed solely for personal motives unrelated to Lyft's business.  As such, the sexual misconduct cannot be said to have been within the scope of employment.").

Plaintiffs have not identified any evidence that would create a genuine issue of fact here and Defendant is entitled to summary judgment on Plaintiffs' claims for assault and battery, negligent infliction of emotional distress, intentional infliction of emotional distress, and loss of consortium.  Based on the undisputed facts, the torts committed by Robinson were not in furtherance of Defendant's business and were outside the scope of his responsibilities.

20

Defendant was hired by Mount Sinai to provide shuttle bus service to its employees. Dkt. No. 25-15 ¶ 3; Dkt. No. 30-1 ¶ 3; Dkt. No. 25-5 at 12:3–5. Robinson's job was to operate one of those shuttle buses. Dkt. No. 25-15 ¶ 4; Dkt. No. 30-1 ¶ 4. The assault that he committed was both literally and figuratively outside the scope of his employment. Sexual assault on his passengers was not part of his job and "in no way advanced the business" of his employer. *Cabrini Med. Ctr.*, 765 N.E.2d at 847. From the undisputed facts, he engaged in the assault to further his own sexual interests. To engage in it, he departed from the regularly scheduled route. Dkt. No. 30-1 ¶ 43; Dkt. No. 33 ¶ 43.

Plaintiffs argue that "Defendant placed Robinson in a position of unsupervised authority over passengers and afforded him unmonitored access to Plaintiff during the course of his shift" and that "[a]rguably, it was foreseeable that due to the low volume of passengers, at some point a passenger may find himself/herself alone with a shuttle bus driver." Dkt. No. 28 at 4–5. But those facts do not establish that Robinson was acting within the scope of his employment and in furtherance of his employer's business when he assaulted Kisso-Gashi. In virtually every sexual assault case where the New York courts have rejected *respondeat superior* liability, it could be said that the assailant had unsupervised authority over his or her victim; it is that setting that permitted the assault to occur. *See Cabrini Med. Ctr.*, 765 N.E.2d at 847 (hospital employee against patient); *Episcopal Health Servs., Inc.,* 102 N.Y.S.3d at 77 (doctor against patient); *Cnty. of Onondoga*, 217 N.Y.S.3d at 379 (probation officer against supervisee); *Fencers Club, Inc.*, 83 N.Y.S.3d at 198 (instructor against student athlete); *New York City Transit Authority*, 3 N.Y.S.3d at 37 (instructor against student). And, while it might be foreseeable that a passenger might be alone with a driver on one of Defendant's evening routes, Plaintiffs have not cited evidence that would make it foreseeable that a passenger would be at risk of sexual assault. Kisso-Gashi had

known Robinson since about 2018 or 2019 and never made any complaints about him prior to

the incident and never felt uncomfortable with him prior to the incident.  Dkt. No. 25-15 ¶ 21,

22–23; Dkt. No. 30-1 ¶ 21; Dkt. No. 25-4 at 108:19–09:4.  There is nothing about the job of bus

driver for hospital employees that would create a reasonably foreseeable risk of sexual assault.

Even then, the New York courts have held that "[a]n employer is not liable for a tort committed

by an employee for his own personal motives even when the tort might be reasonably

foreseeable." *Sclafani v. PC Richard & Son*, 668 F. Supp. 2d 423, 447 (E.D.N.Y. 2009) (citing

*Fernandez v. Rustic Inn, Inc.,* 60 A.D.3d 893, 876 N.Y.S.2d 99, 102 (2009)).[7]  Likewise, "the

mere fact that an employee's actions, which are the subject of inquiry, occurred during the time

of his employment, does not conclusively demonstrate that said actions were within the scope of

his employment or that he was performing said acts in the furtherance of his employer's

business." *Nicollette T. v. Hosp. for Joint Diseases/Orthopaedic Inst.*, 603 N.Y.S.2d 146, 146

(1st Dep't 1993).

Plaintiffs further argue that Defendant was on constructive notice of the assault because it

was captured on the employer's video security system and that Defendant negligently failed to

act in response to the assault.  Dkt. No. 28 at 5–6.  It is undisputed, however, that the video

surveillance is used to monitor events such as the bus driver hitting the brakes too hard, hitting

another vehicle, or driving over the speed limit, but does not monitor when a bus deviates from a

---

[7] The American Law Institute has published a draft Restatement (Third) of Torts: Miscellaneous Provisions that, distilling the law, states that one fact that is relevant to vicarious liability is whether "the nature or conditions of the employee's employment creates a reasonably foreseeable risk of sexual assault."  Restatement (Third) of Torts: Miscellaneous Provisions § 11(a) TD No. 4 (2025).  Plaintiff does not argue that the job of bus driver to adults creates such a risk, nor would the law or the facts here support such a conclusion. *See Doe v. Rohan*, 793 N.Y.S.2d at 173–74 (respondeat superior does not apply to sexual assault by bus driver).

route.  Dkt. No. 25-15 ¶ 12; Dkt. No. 25-5 at 25:22–30:30, 34:22–35:5.[8]  Defendant does not have access to the recordings from SmartDrive's monitoring system unless an event is triggered by some sort of action by the shuttle bus driver, Dkt. No. 30-1 ¶¶ 53–54; Dkt. No. 33 ¶¶ 53–54, and Defendant does not recall seeing a triggering event for the day of the incident, Dkt. No. 30-1 ¶ 60; Dkt. No. 33 ¶ 60.  There is no evidence that Defendant "actually observed or unreasonably ignored events immediately preceding the misconduct which indicated a risk of imminent harm to plaintiff."  *Cabrini*, 765 N.E.2d at 848.  Even if there were, such evidence would not give rise to *respondeat superior* liability.  *Id.*[9]  Defendant is therefore granted summary judgment as to Plaintiffs' first, third, fourth, and fifth claims.

**C.      Negligent Hiring, Supervision, and Retention**

Kisso-Gashi's second cause of action asserts a claim for the negligent hiring, supervision, and/or retention of Robinson.  Dkt. No. 3 ¶¶ 35–38.  Defendant argues that it is entitled to summary judgment on Plaintiff's claims of negligent hiring, supervision, and/or retention because there is no evidence that Robinson "was ever known to have committed any misconduct

---

[8] Plaintiffs dispute this assertion but it is supported by testimony from a senior manager at Defendant who oversaw the bus routes in connection with Defendant's contract with Mt Sinai. Dkt. No. 25-5 at 7:7–11, 22:21–25, 25:22–30:20.

[9] The Court's conclusions also apply to Kisso-Gashi's claims for negligent and intentional infliction of emotional distress which seek to impose liability on defendant derivative of the conduct of its employee.  *See Villalobos v. Telemundo Network Grp. LLC,* 2025 WL 2687948, at *7 (S.D.N.Y. Sept. 19, 2025) (dismissing claim for negligent infliction of emotional distress for failure to plead basis for *respondeat superior* liability); *Noonan v. City of New York*, 2015 WL 3948836, at *7 (S.D.N.Y. June 26, 2015) (same regarding claim for intentional infliction of emotional distress); *Kovalchik v. City of New York*, 2014 WL 4652478, at *10 (S.D.N.Y. Sept. 18, 2014) (intentional infliction of emotional distress).  The same is true for Gashi's claim for loss of consortium as he seeks to hold Defendant liable for loss of consortium under a theory of *respondeat superior*.  Dkt. No. 3. ¶ 49; *see Dilworth v. Golberg*, 2011 WL 4526555, at *9 (S.D.N.Y. Sep. 30, 2011) (dismissing claim for loss of consortium for failure to plead basis for *respondeat superior* liability).

of a sexual nature either prior to his hiring by Defendant or during his employment" with Defendant.  Dkt. No. 25-16 at 7.

"In instances where an employer cannot be held vicariously liable for its employee's torts, the employer can still be held liable under theories of negligent hiring, negligent retention, and negligent supervision." *Kenneth R. v. Roman Cath. Diocese of Brooklyn*, 654 N.Y.S.2d 791, 793 (2d Dep't 1997).  A claim for negligent hiring, supervision, and retention rests upon a form of direct liability that stems from the employer's own negligence "quite apart from any question of vicarious liability." Prosser & Keeton § 71; *see Francois v. Metro-N. Commuter R.R. Co.*, 107 F.4th 67, 72 (2d Cir. 2024) (distinguishing between direct liability for negligent hiring claim and vicarious liability pursuant to *respondeat superior*); *Brown v. Vill. of Pelham*, 2010 WL 11712459, at *1 (S.D.N.Y. July 2, 2010) (distinguishing between direct liability for negligent hiring, training, and supervision claims and vicarious liability pursuant to *respondeat superior*); 53 N.Y. Jur. 2d Employment Relations §§ 391, 393.  "The employer's negligence lies in having placed the employee in a position to cause foreseeable harm, harm which would most probably have been spared the injured party had the employer taken reasonable care in making decisions respecting the hiring, . . . retention, or supervision of the employee." *Sayegh v. City of Yonkers*, 228 A.D.3d 690, 691 (2d Dep't 2024) (citation omitted); *see Gray v. Schenectady City School Dist.*, 927 N.Y.S.2d 442, 446 (3d Dep't 2011).  Accordingly, to prevail on a claim for negligent hiring, supervision, and retention, a plaintiff must allege "(1) the tort-feasor and the defendant were in an employee-employer relationship, (2) the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels."

24

*Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 361 (S.D.N.Y. 2021) (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)).

Kisso-Gashi's claim for negligent hiring fails because she has not been able to identify facts suggesting that, at the time it hired him, Defendant "knew or should have known of [Robinson]'s propensity for the conduct which caused the injury." *Jackson v. New York Univ. Downtown Hosp.*, 893 N.Y.S.2d 235, 236 (2d Dep't 2010) (quoting *Kenneth R. v Roman Catholic Diocese of Brooklyn,* 654 N.Y.S.2d 791, 793 (2d Dep't 1997)). "An employer does not need to have notice of an employee's propensity 'to behave in the exact manner in which he behaved with' a plaintiff in order for liability to attach, 'only notice of [the employee's] propensity for that 'sort of behavior.'" *Doe v. City of New York*, 2018 WL 6095847, at *7 (S.D.N.Y. Nov. 21, 2018) (Nathan, J.) (quoting *Anna O. v. State*, 2011 WL 6957587, at *7 (N.Y. Ct. Cl. Oct. 19, 2011) (citation omitted)). At the time Robinson was hired, Defendant knew that he had been employed as a driver for over ten years, had a clean criminal record and had passed his drug and physical tests. Kisso-Gashi has pointed to no red flags that would have given Defendant notice that Robinson had a propensity to engage in sexual assault or violent behavior.[10]

Plaintiffs argue that issues of fact prevent the Court from granting summary judgment on Plaintiff's negligent hiring claim. Dkt. No. 28 at 7–8. In particular, Plaintiffs argue that

---

[10] In a summary order, the Second Circuit has identified an ambiguity in New York law regarding the foreseeability that is necessary in cases alleging a sexual assault by an employee. Some cases indicate that the plaintiff must demonstrate that the employer knew or should have known of the employee's propensity for sexual assault while others indicate it is sufficient that the employer knew or should have known of the propensity for assault. *See Doe v. Montefiore Med. Ctr.*, 598 F. App'x 42, 43 (2d Cir. 2015) (summary order); *Martin v. Nieuw Amsterdam Prop. Mgmt., LLC*, 2025 WL 1504124, at *9 (E.D.N.Y. May 27, 2025).

Defendant conducted an eight-year criminal background check rather than the ten-year check that Plaintiffs assert was required by the United States Department of Transportation, that information about Robinson's 1988 conviction was readily available as demonstrated by the fact that Mount Sinai was able to obtain the information within a few days of the incident, and that Robinson lied on his employment application—a point that Plaintiffs say is demonstrated by the fact that he stated he was enrolled in community college from 1991 to 2003 when, in actuality, he was incarcerated from 1988 to 1995.  Dkt. No. 28 at 7–8.  Leaving the last argument last, Plaintiffs' arguments fail to create a genuine issue of material fact.

A defendant may be liable for negligent hiring if it knew "or should have known" of the employee's propensity to engage in the conduct that caused the plaintiff's injury.  This element can be satisfied by evidence of either "[a]ctual or constructive notice . . . of prior similar conduct."  *Doe*, 2018 WL 6095847, at *7 (quoting *Neveah T. v. City of New York*, 18 N.Y.S.3d 415, 418 (2d Dep't 2015)).  But the employer must have reason to look for the evidence of prior similar conduct before he can be held liable for failure to find it.  "[T]here is no common-law duty to institute specific procedures for hiring employees unless the employer knows of facts that would lead a reasonably prudent person to investigate the prospective employee."  *KM*, 83 N.Y.S.3d 197, 199 (2d Dep't 2018) (quoting *Kenneth R. v. Roman Catholic Diocese of Brooklyn,* 654 N.Y.S.2d 791, 795 (2d Dep't 1997)).

The parties dispute whether Defendant was required by Department of Transportation regulations to conduct a ten-year criminal background check.  There is evidence in the record that suggests Defendant believed (at least after the fact) that it was required to go back ten years. Dkt. No. 25-5 at 74:21–23 (Counsel reading email from deponent, supervisor at Defendant, which stated "DOT requires our drivers backgrounds be vetted 10 years looking back"); Dkt. No.

29-1 at 2.  The actual Department of Transportation regulations contain no such requirement.  49 C.F.R. § 391.23; *see also DeSimone v. Select Portfolio Servicing, Inc.*, 748 F. Supp. 3d 136, 145 n.2 (E.D.N.Y. 2024) ("Court takes judicial notice of relevant state regulations published on official governmental websites."); *Baltas v. Maiga*, 119 F.4th 255, 265 (2d Cir. 2024) (taking judicial notice of state administrative directive on review of summary judgment motion).  The dispute, in any case, is immaterial.  There is no reason to believe that, even if Defendant conducted a ten-year criminal history check rather than an eight-year check, they would have discovered Robinson's conviction.  He was convicted 27 years before he was hired and he finished serving his term two decades before he was hired.  Dkt. No. 30-1 ¶ 56; Dkt. No. 33 ¶ 56.  There thus is no basis to conclude that a failure to follow Department of Transportation regulations, if that is what it was, could give rise to a claim for negligent hiring.  *See Mahar v. U.S. Xpress Enterprises, Inc.*, 688 F. Supp. 2d 95, 111 (N.D.N.Y. Feb. 24, 2010) (evidence that supervisor "did not fully comply with federal regulations requiring an annual review. . . is insufficient to create a material question of fact [for claims of negligent hiring, training, and supervision], especially where there is no evidence suggesting that such a review would have revealed any stain on his record.").  And absent red flags giving rise to a duty to investigate, the rest of Plaintiffs' arguments quickly fall away.  It is irrelevant that information about Robinson's 1988 conviction could have been quickly discovered if there was no reason to look.  And absent information about Robinson's conviction, there would have been no reason to believe that there were any concerns about Robinson's employment application.[11]

---

[11] Plaintiffs' argument about the employment application is faulty for another reason.  The argument is premised on the notion that Robinson could not have attended community college from 1991 to 2003 if he was incarcerated from 1988 to 1995.  But the employment application on its face does not state that Robinson continuously attended community college for a period of nearly twelve years in order to receive his two-year associate's degree and even if it did there

Plaintiffs' negligent retention and negligent supervision claims fail for similar reasons. As with negligent hiring, "[t]o state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (quoting *D'Amico v. Christie*, 518 N.E.2d 896, 901–02 (N.Y. 1987)).  While a "defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control . . . '[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.'" *D'Amico,* 518 N.E.2d at 901–02 (quoting Restatement [Second] of Torts § 319 (1965)).  The employer must "be on notice of the defendant's propensity before the misconduct at issue takes place." *O'Reilly v. TP ICAP Glob. Markets Americas LLC*, 2025 WL 2773284, at *13 (S.D.N.Y. Sept. 29, 2025).

Plaintiffs argue that Defendant failed to exercise diligence over Robinson by failing to monitor his routes, failing to implement procedures to detect employee misconduct, including registering deviations from the route as a triggering event, and failing to know whether assault occurred while the driver was on the designated route.  Dkt. No. 28 at 9.  Absent any red flags of

---

would not be any necessary reason to conclude that he did not take classes remotely during some portion of that period.  A genuine issue of fact must be created by evidence and not "based on speculation." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (citations omitted).

the employee's propensity for injurious conduct, Defendant had no obligation to institute such procedures. *See Bouchard v. New York Archdiocese*, 719 F. Supp. 2d 255, 262 (S.D.N.Y. 2010) (rejecting plaintiff's argument that Defendants failed to adequately train and supervise priest and stating that "Defendants, however, had no duty to investigate [priest], or to warn him not to sexually abuse parishioners, when they had no reason to believe that he would engage in such misconduct."); *see also Holland v. Fahnestock & Co.*, 2003 WL 21697880, at *6 (S.D.N.Y. July 21, 2003) (insufficient that plaintiff pointed out lack of supervision because plaintiff must show "that the employer knew of the employee's propensity for the type of behavior that caused plaintiff's harm." (internal quotation marks and citation omitted)). Here, Defendant had no obligation to chaperone Robinson, or otherwise implement additional monitoring procedures, in the absence of notice that Robinson presented a risk of harm. Plaintiffs point to the fact that Robinson had received four written warnings for misconduct from 2015 to 2018. *Id.* at 8. Those incidents bear no relation to the conduct which caused the injury of which Plaintiff complains. *See Martin v. Nieuw Amsterdam Prop. Mgmt., LLC*, 2025 WL 1504124, at *8 (E.D.N.Y. May 27, 2025) (actual or constructive notice of "prior similar conduct" is required). All of them relate to Robinson's allegedly careless conduct while driving: he turned around to make eye contact with a passenger to whom he was speaking rather than keeping his eyes on the road, Dkt. No. 25-9 at 1; he rolled through a red light at 10 miles per hour; *id.* at 3, he drove while handling his cellphone, *id.* at 2; and he had a conversation on his cellphone (hands-free) while driving, *id.* at 4. None of these incidents would have put Defendant on notice to exercise care lest Robinson depart from his driver's seat and assault one of his passengers.[12] Accordingly, Defendants are granted summary judgment on Plaintiffs' second claim for relief.

---

[12] Plaintiff states that prior to the assault, she and her colleague Ruth expressed discomfort about

**CONCLUSION**

The motion for summary judgment is granted. The Clerk of Court is respectfully directed to close the motion at Dkt. No. 25, to enter an order granting summary judgment for Defendant dismissing all counts against Defendant, and to close this case.

SO ORDERED.

Dated: March 23, 2026
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge

---

interacting with Robinson as he would say inappropriate things to them. Dkt. No. 28 at 8–9. The record contains no evidence that Plaintiff was uncomfortable with Robinson before the assault and it is undisputed that the conversation with Ruth occurred after the assault. Dkt. No. 25-15 ¶¶ 21, 22–23; Dkt. No. 30-1 ¶ 21; Dkt. No. 25-4 at 86:16–87:9, 108:19–09:4. In any event, there is no evidence that either complained to the corporate defendants about Robinson's conduct before the assault. *See O'Rear v. Diaz*, 2025 WL 283169, at *11 (S.D.N.Y. Jan. 23, 2025).